J-S27045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ANN TRUAX | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| EDMUND RYAN ZYCH A/K/A RYAN | : | |
| ZYCH AND SIOBHAN E. ZYCH | : | |
| | : | |
| | : | |
| EDMUND RYAN ZYCH A/K/A RYAN | : | No. 344 MDA 2023 |
| ZYCH | : | |
| v. | : | |
| | : | |
| SIOBHAN E. ZYCH | : | |
| | : | |
| | : | |
| SIOBHAN ZYCH | : | |
| | : | |
| v. | : | |
| | : | |
| RYAN ZYCH | : | |
| | : | |
| | : | |
| APPEAL OF: EDMUND RYAN ZYCH | : | |

Appeal from the Order Entered January 30, 2023
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  2021-07784

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN:                    **FILED:  OCTOBER 26, 2023**

Appellant, Edmund Ryan Zych a/k/a Ryan Zych ("Father"), appeals from the order denying his petition for sole legal custody of his child, K.Z. ("Child"), born December 2016; granting the petition of Siobhan E. Zych ("Mother"), for shared physical custody of Child, and granting the petition of maternal

grandmother Ann Truax ("Grandmother"), for partial physical custody of Child.[1]  We affirm.

Father and Mother (collectively, "Parents") commenced custody proceedings concerning Child in October 2019 following their marital separation.[2]  By agreement of the parties, the trial court awarded Father and Mother shared legal custody of Child, Mother primary physical custody, and Father partial physical custody.  *See* Order 12/5/19.

In December 2020, following Father's petition for a custody modification, the court granted Father primary physical custody on an *interim* basis, and limited Mother to only supervised physical custody, based on Mother's drug tests indicating her addiction to alcohol and cocaine.  The December 2020 order named Grandmother and her husband, Timothy Truax ("Step-Grandfather"), as the custodial supervisors for Mother.  The order also directed Mother to attend drug and alcohol counseling with Mary Pat Melvin Scarantino, L.S.W., C.D.A.C., M.S. ("Scarantino"), and follow all recommendations.  *See* Order 12/8/20, at 1-2.

In April 2021, Mother moved for a custody modification, and the trial court increased her supervised custody periods.  The April 2021 order required

---

[1] The trial court consolidated the parties' child custody petitions. It entered subsequent amended orders correcting typographical errors.

[2] Father and Mother filed separate divorce actions in October 2019, both of which included a child custody count.  The trial court consolidated those actions.

Mother to submit to another drug and alcohol test and to continue drug and alcohol counseling with Scarantino.

In May 2021, Father filed a petition for contempt and special relief, alleging that Mother violated the custody order by exercising unsupervised physical custody in April 2021, and Mother had recently tested positive for cocaine and its metabolite coca-ethylene. **See** N.T., 11/21/22, at 193-196. Father requested the court remove Grandmother and Step-Grandfather as custodial supervisors and appoint someone else as Mother's custodial supervisor. **See id**. at 197. The trial court temporarily suspended Mother's supervised physical custody in May 2021, pending a hearing in June 2021 on Father's petition. Mother did not appear at the June 2021 hearing. Following Mother's failure to appear at the hearing, the trial court suspended Mother's supervised physical custody but allowed her phone contact with Child. **See** Trial Court Order, 1/30/23, at 10.

In August 2021, Grandmother and Step-Grandfather filed a custody action against Parents seeking shared legal, and partial physical, custody of Child. Father raised preliminary objections to Step-Grandfather's standing. The court removed Step-Grandfather from the action. **See** Trial Court Order, 1/30/23, at 10.[3] Mother petitioned for supervised physical custody in March

---

[3] The parties agreed that Grandmother had standing to seek partial physical custody pursuant to 23 Pa.C.S.A. § 5325(2) (granting standing to grandparents seeking partial physical custody). Because Grandmother later
*(Footnote Continued Next Page)*

2022. *See* N.T. 11/21/22, at 197. The court entered an agreed-upon order granting Mother have supervised visits at LOTUS Therapeutic and Empowerment Services, LLC ("LOTUS"), provided Child's therapist and the LOTUS supervisor agreed the visits were in Child's best interests. *See* Trial Court Opinion, 3/24/23, at 4. Mother's supervised physical custody began in April 2022. *See* N.T. 11/21/22, at 98-99.

In April 2022, Father petitioned for a modification of the custody order seeking sole legal custody of Child. Mother filed an answer and counterclaim requesting continued shared legal custody and shared physical custody. Grandmother's August 2021 petition, Father's April 2022 petition, and Mother's subsequent answer and counterclaim to Father's April 2022 petition, were all pending before the trial court when it held a trial in November 2022.

The trial court heard the following evidence at the November 2022 trial: Mother, who lived with her partner, testified she had turned to drugs and alcohol to relieve the pain of separating from Father, but never used drugs in the presence of Child or G.T., Child's cousin, whom she has been raised to believe is her sibling. *See* N.T., 11/21/22, at 14, 88-89, 92, 121-22.[4] Mother

_____

withdrew her request for shared *legal* custody, *see* N.T., 11/21/22, at 147, we do not address her standing to make that request under 23 Pa.C.S.A. § 5324.

[4] G.T. is the daughter of Child's maternal aunt and is approximately twenty-two months older than Child. G.T.'s father is deceased, and her mother was incarcerated when she was eight days old. *See id*. at 92; N.T., 11/22/22, at
*(Footnote Continued Next Page)*

- 4 -

testified she had been sober from drugs since September 2021, and only "occasionally ha[s] a drink at dinner." *Id*. at 20. Mother said she stopped seeing a court-ordered counselor in 2021 because she could not face lying to the counselor about her continued drinking and drug use. *See id*. at 16-17, 24. Mother also admitted drinking in violation of a January 2020 Accelerated Rehabilitative Disposition ("ARD") order. *See id*. at 28. Mother asserted her new job and therapy were giving her a renewed feeling of respect and helping her examine how she handles stressful situations. *See id*. at 15-16. She stated that in therapy she learned she used drugs and alcohol as a coping mechanism and has learned new coping mechanisms for her depression and anxiety. *See id*. at 81-82.

Jill Schappert ("Schappert"), Mother's childhood friend and Child's godmother, testified about Mother's retreat into drugs and alcohol during her divorce, and her improvement as a result of counseling and her new job. Schappert testified that Mother had become a "homebody" who no longer had

---

240. Grandmother and Step-Grandfather were awarded custody of G.T, but after Child's birth, Father and Mother raised G.T. with Child in their home. *Id*. at 240-41. Although G.T. knows her biological mother, she identifies Mother and Father as her mother and father. *See id*.

In 2021, Father initiated a custody action regarding G.T. against Mother, Grandmother, Step-Grandfather, and G.T.'s natural mother, and a different court granted him *in loco parentis* status. *See* N.T., 11/21/22, at 200. In March 2022, the court entered an agreed-upon order in G.T.'s case awarding all of the parties except Mother shared legal and physical custody of G.T. *See id*. at 134.

anything "wild" going on, but instead kept regular dinner times and bedtimes. *Id*. at 110-12. Grandmother also testified that Mother had made a renewed commitment to her physical and mental health. *See id*. at 148.

Kristen Baer ("Baer"), the LOTUS therapist who supervised Mother's visits with Child, testified Child and G.T. attended those visits together. *See id*. at 101. Baer testified that Father told her that the girls engaged in imaginative play together, and Baer herself observed Child's and G.T.'s deep sense of connectedness to each other and to Grandmother's large extended family, which was rare in Baer's experience. *See id*. at 102-04.

Father testified he was seeking sole legal custody because of Mother's "out of control lifestyle," failure to make "wise decisions about herself," and possible continued use of intoxicants. N.T., 11/21/22, at 212-13. He testified that he assumed virtually all parental responsibilities when Mother was using drugs and alcohol, that Grandmother recognized that Mother was not fulfilling her responsibilities, and that Mother did not follow up on her promise of Christmas presents for Child. *See id*. at 160-70, 183-86. He expressed concern for Child's safety. *See id*. at 213.

Joann James, Father's aunt who assists him with childcare, testified Father was a good caregiver. *See* N.T., 11/22/22, at 343-46.[5] Kelly Leicht,

_____

[5] The notes of testimony from the November 22, 2022 trial are consecutively numbered to the previous day's transcript and begin on page 238 of that transcript.

Father's friend, a teacher and his occasional intimate partner, testified that Father encouraged Child to speak to Mother on FaceTime calls, and is an exemplary Father. *See id*. at 374. Samantha Wielgopolski ("Wielgopolski"), Child's counselor, testified Child had a very strong bond with Father. *See id*. at 356, 362.

Grandmother testified she has been a part of Child's life since birth. *See* N.T. 11/21/22, at 121. She described vacations that she took with Child, Father, and Mother in 2017, 2018, and 2019. *See id*. at 127, 132. Grandmother testified that when Parents separated in September 2019, Mother and Child lived with her and Step-Grandfather until December 2020. *See id*. at 124. Grandmother testified that since February 2022, she has only seen Child at soccer games, a dance recital, and in the driveway when picking up G.T., and Child has "been kept from . . . all kinds of extended family" including her immediate family members and that Child has been "a[] part of their life since the day she was born." *Id*. at 124-27. Grandmother expressed her goal to communicate and cooperate better with Father. *See id*. at 130-31. Grandmother also presented the testimony of Arnold Terry Shienvold, Ph.D ("Dr. Shienvold"), who testified that he did not perceive a pattern of neglectful parenting that would warrant keeping Child from Grandmother, and that, in his opinion, Grandmother is a "loving[,] competent caregiver," and Father, in contrast, was lacking in self-insight and had a suspicious nature.

N.T. 11/22/22, at 253-55, 259, 264, 293-94, 300.[6] Dr. Shienvold additionally

testified that,

> when [the parties] all got along, [Child] and [G.T.] were being raised as siblings, and frequently traveled together with respect to the time spent with the various parties. . . . My understanding from what they told me was that even after . . . [Mother's] and [Father]'s separation, [Child] was on a custody schedule [between Father and Mother] at that point that [G.T.] and [Child] were spending that time together.

*Id*. at 241. Dr. Shienvold reiterated, "generally [Father] had a position that

he wanted [Child] and [G.T.] together" and that, prior to the dispute, there

was the four/three [day custody] schedule that was being employed and

[Child] was on the same schedule." *Id*. at 242. On redirect examination by

Grandmother's counsel, Dr. Shienvold testified that he disagreed with Father's

conclusion that Grandmother was untrustworthy, although she had made an

error of judgment previously with Mother: "I just didn't believe that there was

a pattern of neglect[ful] parenting that warranted them being restricted from

their grandchild." *Id*. at 293-94 (emphasis added).

During the course of the custody proceedings, Grandmother's and

Father's relationship deteriorated and became hostile. Father testified that

after visits at Grandmother's home, Child would come home "biting . . . kicking

---

[6] Dr. Shienvold performed an evaluation in the custody action concerning G.T., but not in the action concerning Child. As part of the evaluation concerning G.T., Dr. Shienvold conducted psychological testing of Father, Mother, and Grandmother. *See* N.T., 11/22/22, at 239-240.

. . . [and] angry at me. She would spit at me. And I had concerns over what was being told to her in regard to why she couldn't see [Mother]." N.T., 11/22/22, at 261. Father testified he stopped Child's contact with Grandmother in February 2022 because Grandmother was sometimes not at home when he dropped Child off for visits, and there was one occasion when Child "came home starving," causing broken trust with Grandmother. N.T., 11/21/22, at 204. Father testified that he opposed Grandmother's request for partial physical custody because, in part, "I can't trust her because of all the lies" Grandmother told about Mother's condition, and at least one time when Grandmother left Child in Mother's care. *Id*. at 195-98, 204, 213.

Wielgopolski, Child's counselor, testified Child is diagnosed with adjustment disorder with a depressed mood. *See* N.T., 11/22/22, at 355. Child began counseling with Wielgopolski in August of 2021, for anger and aggressive behavior and issues involving "loss and adjustment." *Id*. at 352-53. Child's treatment goals include "learning to verbalize her emotions," as well as "[l]earning positive coping skills" and "engaging in family sessions as needed" with Father or Mother. *Id*. at 355. Wielgopolski testified that, because Child was progressing in treatment goals, her sessions were reduced from weekly to bimonthly. *See id*. at 354. Wielgopolski testified that Child loves both Father and Mother. *Id*. at 362. She described Child's bond with Father as "very strong." *Id*.

In January 2023, the trial court denied Father's request for sole legal custody of Child. Instead, the court awarded Father and Mother shared legal custody, Father primary physical custody, Mother partial physical custody, and Grandmother partial physical custody. Mother received periods of unsupervised custody weekly from Monday at 5:30 p.m. until Wednesday drop off at school, and once every month from Saturday at 7:00 p.m. until Monday drop off at school, and Grandmother received physical custody of Child on the fourth weekend of every month in "an effort to keep Child with her cousin, G.T"; Father received all other periods of custody. *See* Trial Court Order, 1/30/23, at 2-3.[7]

Father timely filed a notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Father presents the following two issues for review:

1.  Did the trial court abuse its discretion or commit an error of law. . . by awarding Mother significant unsupervised partial physical custody[,] despite a lack of any substantive evidence demonstrating that she was treating for an admitted addiction?

2.  Did the trial court abuse its discretion or commit an error of law. . . by awarding []Grandmother one full weekend per month[,] when her prior contact with . . . Child always occurred during Mother's periods of custody?

---

[7] The court made additional provisions for holidays and weekends. *See* Order, 1/31/22, at 3-5.

- 10 -

Father's Brief at 6.[8]

We review Father's custody issues according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (citation omitted). Moreover,

> [o]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

---

[8] Father identifies Mother's custody award as "unsupervised partial physical custody." In the subject order, the trial court identifies Mother's custody award as "periods of unsupervised custody." Neither term is included in the Child Custody Act. *See* 23 Pa.C.S.A. § 5323(a). Accordingly, we refer to Mother's custody award as "partial physical custody."

***R.M.G., Jr.***, 986 A.2d at 1237. The test is whether the evidence of record supports the trial court's conclusions. ***A.V. v. S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014). In addition,

> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

The paramount concern in custody cases, "including those in which grandparents are seeking rights, is the best interests of the child." ***D.R.L. v. K.L.C.***, 216 A.3d 276, 279 (Pa. Super. 2019) (citation omitted). "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

The Child Custody Act requires that trial courts consider sixteen best interest factors when awarding custody, as follows.

### § 5328. Factors to consider when awarding custody

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by

another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In addition, the trial court must consider the following factors regarding Grandmother's partial physical custody request.

**(c) Grandparents and great-grandparents.—**

(1) In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), the court shall consider the following:

(i)      the amount of personal contact between the child and the party prior to the filing of the action;

(ii)      whether the award interferes with any parent-child relationship; and

(iii)      whether the award is in the best interest of the child.

23 Pa.C.S.A. § 5328(c)(1).

While the trial court must consider all of the above factors, "there is no required amount of detail for the trial court's explanation"; rather, "all that is required is . . . that the custody decision is based on those considerations." ***D.R.L.***, 216 A.3d at 280 (internal citations and quotation marks omitted).

Father's first issue pertains to the award of partial physical custody to Mother. Father asserts Mother presents a safety risk to Child, the trial court's order failed to address that risk, and the trial court erred in its findings concerning section 5328(a)(14), relating to Mother's history of drug abuse, which Father asserts was dispositive, because Mother failed to prove her sobriety. *See* Father's Brief at 19-29. Father maintains that "the court completely ignored the fact that Mother provided no evidence to indicate she was or had ever actually taken steps to address [her substance abuse] and admitted that she continued to drink alcohol." Father's Brief at 28. Father also argues that an August 2022 letter written by Mother's therapist, Laura Loomis ("Loomis"), MA, LPC, about Mother that he introduced at trial does not address Mother's drug and alcohol abuse. *See id*. at 22. Father finally asserts that the court failed to properly weigh section 5328(a)(2), (3), (4), (12), and (14). *See id*. at 25-29.

Concerning Father's claims relating to Mother's drug and alcohol history, section 5328(a)(14), the court concluded that that factor weighed against Mother. The trial court declared, however, "the past is not so heavily weighted against Mother that it outweighs all 16 factors and a finding that it is in the best interest of [C]hild to expand Mother's custodial rights." Trial Court Order, 1/30/23, at 27. The court found no evidence that Mother continued to engage in illegal drug use, and it credited Mother's testimony, corroborated by her

friend, Schappert, and Grandmother that she has not used illicit drugs since September of 2021. *See id*. at 26-27.

Mindful of the substantial deference due to the trial court's fact-finding, we conclude the evidence of record supports the trial court's conclusion. *See Ketterer*, 902 A.2d at 540. Mother admitted prior drug and alcohol abuse but explained that she had benefited from a new job and therapy and had been drug-free for fourteen months. *See* N.T. 11/21/22, at 14-16, 88-89.[9] Mother's friend Schappert also testified to Mother's recovery from her slide into substance abuse. *See id*. at 110-12.[10] Mother admitted that she stopped court-ordered therapy shortly after the trial court's April 2021 order, stopped seeing her counselor because she was embarrassed about lying about her drug use, and did not participate again in counseling until April 2022. *See id*. at 26. Mother testified, however, when she began seeing Loomis, *see id*. at 17, 19, she gained significant insight into her use of drugs and alcohol as self-medication for anxiety and depression and learned "the correct mechanisms

---

[9] Mother testified that she drinks only occasionally and does not self-medicate. *See* N.T., 11/21/22, at 83.

[10] Additionally, Grandmother testified to Mother's improvement in the past year. *See* N.T., 11/21/22, at 148.

to cope without using those things. How to manage my anxiety. How to manage my depression without using substance[s]." *Id*. at 81-82.[11]

Additionally, Loomis's letter stated she had updated Mother's diagnosis to generalized anxiety disorder; Mother was attending weekly cognitive behavioral, and dialectical behavior therapy; and Mother "displays appropriate behavior, and takes responsibility," has "made great improvements in gaining and utilizing appropriate coping skills and reducing her levels of stress and anxiety," and does not appear to be a risk to herself or Child. *See* Exhibit D-2. Dr. Shienvold, who performed the August 2021 custody evaluation in G.T.'s custody case, testified to the same effect. *See* N.T., 11/22/22, at 239, 266, 286. Dr. Shienvold opined to the appropriateness of Loomis's treatments and was unsurprised that it had produced Mother's insight about self-medication. *See id*. at 288-89.[12]

Based on the testimony of Mother, Ms. Schappert, Grandmother, and Dr. Shienvold, there was a clear factual basis for the court's rejection of Father's claim that Mother presented no evidence of drug and alcohol

_____

[11] Mother testified Loomis left the practice in August 2022, and the first available appointment with a counselor who could accommodate her work schedule was in January 2023. *See* N.T., 11/21/22, at 19.

[12] To the extent Father argues the court erred in failing to find section 5328(a)(14) dispositive based solely on Mother's admission about occasional drinking, we reject it. Dr. Shienvold testified that not all theories on treatment of alcohol use disorder demand complete abstinence. *See* N.T., 11/22/22, at 281-22.

treatment and posed a present safety risk to Child. Accordingly, the trial court did not abuse its discretion in how it weighed Mother's prior drug use as a factor.

Father further asserts in his first issue that the court improperly weighed the following section 5328(a) custody factors: (a)(2) (as slightly against Father); and (a)(3) and (12) (as neutral). Concerning Section 5328(a)(2),[13] Father argues that the trial court, in its finding that he erected "overprotective safeguards," and "took the word 'safeguard' from the statutory language and twisted the factor against" him. Father's Brief at 25. Father asserts the court should have weighed the factor neutrally because there is no evidence in this case of any abuse by Father or Mother.

The court reasoned, "Father's provision of safeguards and supervision of Child have been extraordinary and have hindered Mother from spending appropriate amounts of quality time with their daughter." Trial Court Order, 1/30/23, at 22. The trial court acted within its discretion insofar as it found, *contra* Father's position, that Mother's substance abuse posed no present risk of harm to Child. However, even had the court abused its discretion in weighing the factor slightly against Father, that factor is not determinative of

---

[13] As noted, section 5328(a)(2) addresses present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm, and which party can better provide adequate physical safeguards and supervision of the child. **See** 23 Pa.C.S.A. § 5328(a)(2).

the court's custody decision, and, accordingly, does not warrant reversal. *See Swope v. Swope*, 689 A.2d 264, 266 (Pa. Super. 1997) (noting that no "single factor" in the custody analysis is controlling and this Court must affirm a custody order "[a]bsent proof of a gross abuse of discretion or manifest error"). Therefore, this claim fails.

With respect to section 5328(a)(3), the parental duties performed by each party on behalf of the child, Father argues that the court abused its discretion in concluding this factor was neutral rather than weighing it in his favor due to his exercise of "primary physical, and almost sole custody, of [Child] for three years. Mother was not able to perform any parental duty outside her supervised visits." Father's Brief at 26. Father further asserts:

> The trial court was free to find, as it did with respect to [s]ection 5328(a)(10), that Mother was capable of performing such duties on behalf of Child, but it erred with respect to [s]ection 5328(a)(3)[,] because that factor examined her duties relevant to the time of trial, and at that time she had performed them only on an extremely limited basis.

*Id*. Father provides no case law to support his claim, and we are not aware of any. Therefore, to the extent the court, which saw the parties and was able to evaluate their credibility, weighed the factor neutrally based on Mother's previous parental duties performed for Child, and we will not disturb it. *See* Trial Court Order, 1/30/23, at 23. *See also O.G. v. A.B.*, 234 A.3d 766, 774 (Pa. Super. 2020) (noting where a parent is "equally capable" of caring for a child, and in fact performs some duties, the trial court does not abuse its discretion by declining to weigh section 5328(a)(3) against that parent even

though the other parent asserts a prior lack of performance of parental duties).

Concerning section 5328(a)(4), relating to the need for stability and continuity in all aspects of the child's life, Father asserts that the trial court referenced factors that supported a finding of Mother's stability, it failed to consider other factors, like the newness of her job, her period away from therapy, her lack of substance abuse counseling, and her use of alcohol. **_See_** Father's Brief at 27.

The trial court found that this factor weighed slightly more for Father because he has provided stability for Child. However, the trial court found Mother credible concerning her acceptance of responsibility for her actions and her taking of actions to change her life for the better, and the court saw no indication going forward that Mother will not be able to provide the necessary stability for Child. **_See_** Trial Court Order, 1/30/23, at 23; Trial Court Opinion, 3/24/23, at 14.

The record supports the court's findings with respect to section 5328(a)(4). It showed that Mother had learned from her past mistakes and therapy, had insight into how to avoid resorting to drug and alcohol self-medication, and had made significant changes in her daily routine. Because the record supports the trial court's determination, we perceive no abuse of discretion.

Finally, Father argues that the court abused its discretion by neutrally weighing section 5328(a)(12), each party's availability to care for the child or ability to make appropriate child-care arrangements. Specifically, he asserts, "the trial court erred in finding both parties were available on an equivalent basis for [C]hild. . . ." Father's Brief at 27. Father states that Mother works more hours per week than he, so he "was clearly free for [C]hild on a significantly greater basis." *Id*. at 28.

In weighing the factor neutrally, the court found that "[b]oth families have a significant amount of family support and an extended family willing to help the parents when they are unavailable." *Id*. at 26. The trial court was free to conclude that Parents, considering their familial support, were equally able to care for Child or make appropriate arrangements for Child's care. Because the record supports the court's findings with respect to section 5328(a)(12), we will not disturb it. That the trial court did not weigh the factors as Father would have liked does not demonstrate an abuse of discretion. As Father has failed to show the trial court abused its discretion in its weighing of the custody factors, he is due no relief.

In his second issue, Father asserts the evidence does not support Grandmother's receipt of partial physical custody awarded on the fourth weekend of every month pursuant to section 5328(c)(1)(i) (amount of personal contact) and (ii) (interference with parent-child relationship). Before

addressing the merits of this issue, we must determine whether Father has properly preserved it.

Issues not included in an appellant's statement of questions involved and concise statement of errors complained of on appeal are waived." **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017). We observe that while the trial court filed its mandatory assessment of the Section 5328(a) factors with respect to Father, Mother, and Grandmother simultaneously with the custody order, **see** Trial Court Order, 1/30/23, at 21-27, the trial court did not assess three mandatory section 5328(c)(1) factors relating to Grandmother. However, Father did not assert error arising from the omission of these factors in his concise statement of errors complained of on appeal or in the statement of questions involved in his brief. **See** Father's Brief at 6. Accordingly, he has waived this issue for our review.

Father, in the alternative, asserts a preserved issue, namely that,

[w]hile the court ascribed keeping [Child] together with her cousin as a factor favoring Grandmother, its argument is an error of law. The fact that Father, Mother, and Grandmother have shared a parental role in [G.T.]'s life did not create the same situation in this case by default. The trial court created the same situation into this matter by force, reasoning that creating similar situations would keep the two children together more frequently.

Father's Brief at 35-36. Further, Father maintains that, even if Grandmother's partial physical custody award were proper, "it should have been carved from one of Mother's weekends, which was historically when Grandmother was in contact" with Child. **Id**. at 32.

The trial court relied upon Dr. Shienvold's testimony in weighing the following factors in Grandmother's favor: section 5328(a)(5), the availability of extended family; (a)(6), the child's sibling relationships; (a)(10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child; and (a)(16), any other relevant factor. *See* Trial Court Opinion, 3/24/23, at 8. Informed by Dr. Shienvold's testimony, the trial court made the following findings, in relevant part.

Section 5328(a)(6):

[C]hild was raised with a biological first cousin . . . who was always held out to be her "sister." . . . There was undisputed testimony with regard to the strong "sibling" bond between the two children.

***This factor weighs against Father for contributing to the separation of the siblings whereby [Child] is unable to go to Grandmother's with her cousin which is against [Child]'s best interests.***

\* \* \* \*

Section 5328(a)(10):

Father has attempted to stifle the mother-daughter and grandmother-granddaughter relationship in the name of child safety. In fact, this has risked alienation from two family members [who] love [C]hild and have been very involved in [C]hild's life.

Father has been providing for these needs because Grandmother has been prevented from seeing [C]hild and Mother has supervised visits, although independent witnesses have testified that [C]hild loves Mother and does not want to leave her when supervised visits end.

While Father has been very involved in [C]hild's education and has been present at the school, it still does not counterbalance the emotional needs of [C]hild who is being alienated from another parent (and in this case grandparent). "The stated goal (of fostering the grandparent-child relationship) is **not insignificant**. **D.P. v. G.J.P.**, 146 A.3d 204 (Pa. 2016) (emphasis added).

Here, while [C]hild has been relegated to having only supervised visits with Mother, she is also having to lose her relationship with Grandmother who was very involved in [C]hild's life and who also is the custodian of [G.T.] when [G.T.] is not with [Father]. This has created a potentially unhealthy situation where the Grandmother takes [G.T.] for visitation (usually for a four[-]day period) but does not take [C]hild for visitation.

It should further be noted that the Child Custody Act[,] whereby Grandmother seeks partial custody[,] has an underpinning of the state's interest in protecting the health and emotional welfare of children, which includes ensuring that children are not deprived of beneficial relationships with their grandparents. **See Hiller v. Fausey**, 904 A.2d 875, 886 (Pa. 2006).

**This factor weighs against Father.**

\* \* \* \*

Section 5328(a)(16):

By expanding the custodial rights of Mother and removing any restriction on any contact between Grandmother and [C]hild, [C]hild will be able to spend more time with her cousin as a family unit with Mother and Grandmother[,] when [G.T.] is not with [Father]. This will only enrich [C]hild's life and provide a healthy familial relationship with all family members instead of the current restrictions imposed by Father.

*Id*. at 23-25, 27 (emphases in original).

Upon careful review of the certified record, we discern no abuse of discretion by the trial court regarding Father's preserved issues. Further, Baer's testimony about the strong connections between Child and G.T.—who

calls Parents "Mom" and "Dad"—and with Grandmother's family supports the court's partial custody award to Grandmother. *See* N.T., 11/21/22, at 98-99, 101-04. Therefore, we cannot conclude that the court abused its discretion in considering Child's relationship with G.T. in fashioning the award to Grandmother.

Because the trial court carefully and thoughtfully considered Child's best interests in light of the record and the applicable law, and we discern no abuse of discretion, we affirm the custody order.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/26/2023